IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVESTPIC, LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 10-1028-RGA |
| SAS INSTITUTE, INC., | : |
| Defendant. | : |

## MEMORANDUM OPINION

Brian E. Farnan, Esq., Wilmington, Delaware; Patrick J. Conroy, Esq. (argued), Dallas, Texas, Attorneys for Plaintiff.

Mary B. Graham, Esq. (argued), Wilmington, Delaware, Attorney for Defendant.

May 15, 2012
Wilmington, Delaware

*[signature]*

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is a motion to sever and transfer to the Eastern District of North Carolina. (D.I. 151).

On November 24, 2010, Plaintiff InvestPic LLC filed a Complaint against fifteen defendants, one of which was SAS Institute Inc., for patent infringement. After some motions practice, SAS answered the complaint (D.I. 111) on October 14, 2011, and thereafter filed the instant motion on December 1, 2011. The motion is fully briefed, and has been orally argued.

The Complaint asserts direct and indirect infringement of U.S. patent No. 6,349,291, which concerns a "Method and System for Analysis, Display, and Dissemination of Financial Information Using Resampled Statistical Methods." It was invented by InvestPic's co-owner, Samir Varma, then of Greenwich, Connecticut. (D.I. 1, Exh. A). The patent issued February 19, 2002, and was assigned to Attractor Holdings, LLC, also of Greenwich, Connecticut. (*Id.*). The accused infringing products are said to be "SAS Risk Management and other similar products." (D.I. 1, ¶ 62).

The motion to sever will be granted. The recent Federal Circuit authority, *In re EMC Corp.*, Misc. Docket No. 100 (Fed. Cir. May 4, 2012), expressly states that "motions to sever are governed by Federal Circuit law," and implicitly holds that the issue of proper joinder is also governed by Federal Circuit law. Slip op. at 5 ("joinder in patent cases is based on an analysis of the accused acts of infringement, and this issue involves substantive issues unique to patent law."). While the exact extent of the Federal Circuit's ruling might be subject to debate (since the Court's holding was merely that the district court used an erroneous standard in evaluating a motion to sever, and the Court remanded for further proceedings using the correct standard), it

seems clear to me that application of the standard set forth requires that severance be granted in this case. The Federal Circuit's standard is that defendants should not be "joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *Id.* at 15. Further, "joinder is not appropriate where different products or processes are involved." *Id.* And, "independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*

There is no allegation in the complaint that alleges any connection between SAS and any other defendant, or between SAS's products and any other defendant's products. Therefore, I conclude that SAS is improperly joined, and I will sever the case against SAS.[1]

The statutory authority for transferring the case is § 1404(a) of Title 28, which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] The burden of establishing the need for transfer is on the movant, *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), which in this case is SAS. The Third Circuit has set forth the framework for analysis:

> "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."
>
> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider

---

[1] I would come to this conclusion even in the absence of *In re EMC Corp. See Ventronics v. Hamilton*, Civ. Act. No. 11-1114-RGA (D.Del. March 28, 2012) (D.I. 220, p. 44).

[2] Section 1404 was amended subsequently to the filing of this lawsuit.

all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

 The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

 The public interests have included: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted and numbering added).

There is no dispute that the patent infringement action against SAS could have been brought in the Eastern District of North Carolina, as it is a North Carolina corporation with its principal place of business in the Eastern District of North Carolina.

In my view, interests (1) and (4) support the plaintiff's position that the case should not be transferred. Interests (2), (5), (6), and (8) support the defendant's request to transfer the case. Interests (3), (7), (10), (11) and (12) do not add much to the balancing, as they are either inapplicable or marginally applicable to this case. Interest (9) is applicable but does not meaningfully favor one side or the other.

Plaintiff has chosen Delaware as a forum. That choice weighs strongly in the plaintiff's favor, although not as strongly as it would if the plaintiff had its principal place of business (or,

indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'").[3] InvestPic's principal place of business is in the State of Texas. (D.I. 1, ¶ 1). It is a Delaware limited liability company, and, while I think that gives InvestPic a legitimate reason to sue in Delaware, I think that is also a reason that adds to the weight given its choice to sue in Delaware.

Defendant's preference is the Eastern District of North Carolina, where it has its principal place of business. Clearly, defendant's decision to seek to litigate in the Eastern District of North Carolina is rational and legitimate.

Although the defendant has argued in its briefing that the claim did not arise in Delaware (D.I. 152, p. 14), and that the SAS products that are alleged to infringe were designed, developed and marketed in the Eastern District of North Carolina, I think the claim that is relevant here is the plaintiff's claim that SAS's products, which are sold and offered for sale all over the United States, including Delaware[4], infringed its patent. Thus, I think the claims arise in every judicial district. *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Consequently,

---

[3] I assume, without deciding, that Delaware is not InvestPic's "home turf." *Cf. Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *6-7 (D.Del. Jan. 24, 2012) (holding state of incorporation is "home turf" but also analyzing in the alternative).

[4] There is some issue about exactly which products are the accused products, but given the open-ended description of the accused products in the Complaint, it appears that some of them are used by entities in Delaware that presumably purchased them from SAS. (*See* D.I. 181, Exhs. C, H, & I).

this factor has no weight in the balancing.[5]

SAS is a substantial company, with more than 12,000 employees worldwide, and annual revenues of more than $2,000,000,000. (D.I. 181, Exh. K). The financial status of InvestPic is not set forth in the record, but it appears to consist of two people, one of whom is the inventor of the patent at issue. While InvestPic may be presumed to have the financial wherewithal to pursue this litigation, there is little reason to believe that its pockets are particularly deep. I think this factor disfavors transfer.

At this juncture, it is hard to tell who the witnesses might be. It seems likely that some number of the non-expert witnesses will be employees of SAS. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). SAS has proffered that three of its employees (located in North Carolina) would be witnesses. While I do not in any way question the good faith of the proffer, or that the employees have relevant knowledge, my experience to date suggests that it is unlikely that the identified employees will end up testifying in person (or even by deposition). InvestPic has proffered that its two personnel will testify. One of these is the inventor, Samir Varma, who is located in Connecticut. While I have similar doubts that the other person will testify if there is a trial, I do consider it more likely than not that Varma would testify. Delaware might be marginally more convenient for him than the Eastern District of North Carolina, but that is the most I can conclude. Unfortunately, a patent case is not like a car accident, where the fact witnesses – or likely trial witnesses – can be identified from day one.

---

[5] Of course, the fact that SAS's engineers and marketers for these products are in North Carolina is not irrelevant. It merely is analyzed as part of a different factor.

-6-

All that can be concluded about likely trial witnesses is that sixteen months from now, more of them are more likely to be in Eastern District of North Carolina than in Delaware or within 100 miles of Wilmington. If there is a trial,[6] and if there are one or more necessary witnesses who will only testify if subpoenaed, there is a statistically greater likelihood that such witnesses would be within the subpoena power of the Eastern District of North Carolina than within the subpoena power of the District of Delaware. No likely witnesses who would be unavailable in one location but not the other have been identified. The odds, however, are that such people exist, and that they are in the Eastern District of North Carolina. Thus, this factor very slightly favors transfer.

Similarly, it is hard to tell where most of the books and records would be (other than SAS's).[7] The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. The records of SAS relating to its accused products, which are most likely the most important records for this litigation, *see In re Genentech*, 566 F.3d at 1345, are in the Eastern District of North Carolina, and not in Delaware. In any event, there are no records identified as only being available for trial in one of the two locations.[8] Thus, this factor favors transfer, but is of marginal weight given that it is likely that SAS's records can be produced at trial wherever trial is held.

---

[6] As noted in *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *10-11 (D.Del. Jan. 24, 2012), a trial is an unlikely event.

[7] It is not clear to me whether the plaintiff's records would be in Texas or Connecticut. There is no allegation that they are in Delaware.

[8] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

Enforceability of the judgment is not an issue.

Practical considerations that could make the trial easy, expeditious, or inexpensive favor the Eastern District of North Carolina. A trial in Delaware is likely to be marginally less easy and more expensive for SAS than a trial in the Eastern District of North Carolina, because of travel considerations and expenses for witnesses. A trial in the Eastern District of North Carolina is likely to be marginally less easy and more expensive for InvestPic than a trial in Delaware.[9] On balance, the overall cost and inconvenience of a trial in the Eastern District of North Carolina is likely to be less than it would be in Delaware, but not by a significant amount. Expedition, however, does not seem to depend upon the location of the trial. Thus, this factor slightly favors transfer.

The relative administrative difficulty due to court congestion is difficult to assess. Defendant cites statistics suggesting greater court congestion in Delaware than in the Eastern District of North Carolina. (D.I. 152, p. 20). I do not find any of the cited statistics to be meaningful in predicting what would happen with this particular case, either in Delaware or the Eastern District of North Carolina. I would also note that, in my brief experience, "court congestion" has not caused any delay in assigning trial dates in Delaware. This case is currently set for trial on September 16, 2013. (D.I. 169). It seems unlikely that if it were transferred to the Eastern District of North Carolina, it would get an earlier trial date than that. I therefore believe this factor is neutral.

The "local controversy" consideration is inapplicable here. SAS is a major employer in

---

[9] I base this on plaintiff's principals being located in Connecticut. If I thought that the location of its principal place of business was of practical significance, I would expect the Eastern District of North Carolina and Delaware to be equally easy and inexpensive.

the Eastern District of North Carolina, but I do not think that makes the claim that SAS is infringing the patent of a Delaware company with a principal place of business in Texas into a local North Carolina controversy. Thus, I think this factor is neutral.

The public policy of Delaware encourages the use by Delaware corporations – such as InvestPic – of Delaware as a forum for the resolution of business disputes.[10] Typically, the forum is the Delaware Court of Chancery. More generally, though, Delaware wants corporations to incorporate in Delaware, and the taxes that corporations pay are important to Delaware's financial health. While it is not unusual that a Delaware corporation should sue another corporation in a Delaware court, and is a factor that has some impact on the balancing, *cf. Micron Technology v. Rambus*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)("Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."), this factor significantly overlaps with why InvestPic would have chosen Delaware as a venue in the first place, and is less significant than in *Micron* since SAS is not a Delaware corporation. I do not attribute it independent weight as a "public policy" factor. I believe it is taken into account in the first factor.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

SAS states that InvestPic's "litigation-inspired steps" including incorporation in Delaware shortly before filing this lawsuit in an "attempt to manufacture venue" in Delaware

---

[10] The State of Delaware Division of Corporations, on its website, prominently asks, "Why Choose Delaware as Your Corporate Home?" The answer follows: "More than 900,000 business entities have their legal home in Delaware including more than 50% of all U.S. publicly-traded companies and 63% of the Fortune 500. Businesses choose Delaware because we provide a complete package of incorporation services including modern and flexible corporate laws, our highly-respected Court of Chancery, a business-friendly State Government, and the customer service-oriented Staff of the Delaware Division of Corporations."

should result in less weight being given to InvestPic's choice of forum. (D.I. 152, pp. 10-11). I reject this argument. InvestPic, L.L.C., was incorporated under the laws of the State of Delaware on August 6, 2010. (D.I. 152, p. 11). The patent was originally assigned upon issuance to Attractor Holdings, LLC. (D.I. 1, Exh. A). On July 7, 2010, it was assigned from Attractor to InvestPic, Inc. (D.I. 181-1). SAS asserts that the patent was assigned from InvestPic, Inc., to InvestPic, L.L.C., on August 10, 2010. (D.I. 152, p. 11, n. 7). In its brief, InvestPic, L.L.C., asserts that InvestPic, Inc., is a Delaware corporation (D.I. 180, p. 10, n. 64; *see also* D.I. 181, ¶ 2), and at oral argument, asserted that Attractor Holdings, LLC, was a Delaware limited liability company. (D.I. 302, p. 33; *see also* D.I. 181, ¶ 2). The on-line website of the Delaware Division of Corporations confirms that Attractor Holdings, LLC, was formed under Delaware law on August 20, 1997.[11] There might be cases in which a corporation's connections to Delaware suggest reasons to discount that connection, *cf. In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (according no weight to the plaintiff's choice of venue when its "presence in [that venue] appears to be recent, ephemeral, and an artifact of litigation"), but this is not one of them.

I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011),[12]

---

[11] It does not similarly confirm the assertion about InvestPic, Inc. Even assuming that for some reason InvestPic, Inc., is not a Delaware corporation, it is clear that the patent has a long connection to Delaware corporations.

[12] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media Devices Corp.,* 662 F.3d at 1223. The law of the two Circuits in regard to how to conduct a transfer analysis is different in a number of regards. Of greatest relevance, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance."

but I do not think it is particularly helpful in assessing the transfer request in this case, as its facts were very different. I would characterize that case generally as standing for the proposition that when the parties, all the witnesses, and all the evidence are in one distant jurisdiction, and the only connection to Delaware is that it is the state of incorporation of the defendant, and there is no other reason for the suit to be in Delaware, the suit must be transferred, upon timely request, to the distant jurisdiction. In the present case there is a greater connection to Delaware, as the plaintiff is a Delaware corporation with its personnel (if not its principal place of business) closer to Delaware than to North Carolina, and, also of significance, the plaintiff would be inconvenienced by transfer, as it has no connection at all to North Carolina.

Under Third Circuit law, considerable deference is given to the plaintiffs' choice of forum. I think that when the plaintiff is a small corporation with Delaware as its long-standing corporate home (as I consider the plaintiff to be by virtue of its connection to Attractor Holdings), and the defendant is a national company of the defendant's size, *see Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *3 (D.Del. Jan. 24, 2012) (multi-billion dollar companies doing business on an international scale have a greater burden to meet in seeking transfer), there ought to be a compelling reason to overcome plaintiff's choice of forum. SAS has offered valid reasons, but I do not think SAS has shown that the balance of convenience tips strongly enough in its favor so that transfer should be ordered. I will therefore deny its motion to transfer.

In view of the fact that the case against SAS has been severed, but obviously has various

---

Additional differences are identified in *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *13 n.7 (D.Del. Jan. 24, 2012).

common questions of law and fact with the case against the other fourteen defendants, I will consolidate it for all purposes, other than having a joint trial, with the case against the rest of the defendants, without prejudice to the defendant seeking relief from this order for any appropriate reason.

    An appropriate order will be entered.